NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAN A. DRUZ, et al., | |
| Plaintiffs, | CIVIL NO. 05-4088 (SRC) |
| v. | |
| | **OPINION** |
| BORO OF MANASQUAN, et al. | |
| Defendants. | |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on a Motion to Dismiss the Plaintiffs' Complaint by Defendants A. Joseph Harriman ("Harriman") and Brian Shaugnessy ("Shaughnessy") (docket entry # 16), and a Cross-motion to Amend/Correct the Complaint filed by Plaintiff Dan Druz ("Druz") and his family (docket entry #22).  The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **PARTIALLY GRANTS** and **PARTIALLY DENIES** Defendants' Motion and **GRANTS** Plaintiffs' Motion.

### I. BACKGROUND OF THE CASE

Shaugnessy lives next door to the Druz and his family in the town of Manasquan, New Jersey.  Harriman is Shaugnessy's brother-in-law and is the Chief of the Fire Department in

Brielle, New Jersey.  Brielle is a town adjacent to Manasquan.  The Plaintiffs, Druz and his family, are bringing suit against a number of Defendants in this case.  In addition to Harriman and Shaugnessy, the Plaintiffs' Amended Complaint includes claims against the Boro of Manasquan, the Manasquan Police Department ("MPD"), and MPD officers Michael Bauer ("Bauer"), Dick Dentroux ("Dentrox"), Keith Smith ("Smith"), and Jacob Kleinknecht ("Kleinknecht").  Druz alleges a pattern of conduct, from 1996 through 2003, where the Defendants, acting under color of state law, engaged in conduct that "constituted discriminatory practices and continuing violations of Plaintiffs' civil rights; constituted selective enforcement of the laws of the United States and the State of New Jersey; denied Plaintiff unfettered access to the courts and Plaintiff's right to petition for redress of grievances; denied Plaintiff equal protection under the laws; constituted malicious prosecution; violated Plaintiff's Fourth Amendment Rights; violated Plaintiff's right to a fair trial; violated Plaintiff's right to free speech and thereby constituted retaliatory conduct which chilled the exercise of those rights; violated the provisions of 18 U.S.C. § 1961 *et seq*.; constituted a conspiracy to deprive Plaintiffs of their Constitutional rights; constituted state common law and statutory claims of assault and battery, defiant trespass, and riot; intentional infliction of emotional distress; negligent infliction of emotional distress; fraud; and perjury."  (Am. Compl. at 2, ¶ 1.)

The source of the Plaintiffs' claims is a series of incidents with various members of the MPD, where Druz claims that Kleinknecht and other members of the MPD "embarked upon a series of vindictive acts under color of state law." (Id. at 6, ¶ 12.)  On September 30, 1996 Druz claims that he discovered Kleinknecht in his home "without permission or authority."  (Id.) When Druz "protested the intrusion to the Mayor, the Boro Council, and to the Municipal Judge

of Manasquan," he claims that Klienknecht, in conjunction with other members of the MPD, retaliated with a series of actions against him. (Id.) These alleged acts included improperly charging Druz with filing of a false police report (id. at 7, ¶ 16) and continually issuing Druz citations for motor vehicle violations and disorderly persons offenses which Druz claims made him the "'number one' most ticketed Manasquan resident" during this period (id. at 13, ¶ 37), even though "most of the stops were contrived and had been made without probable cause (id. at 27, ¶ 86.). The actions of the MPD, Druz claims, have made him "a prisoner in his own home" making him "improperly seized by the MPD in violation of the Fourth Amendment of the United States Constitution." (Id. at 13, ¶ 39.)

In addition to his problems with the members of the MPD, Druz also cites to two incidents involving Shaugnessy and Harriman. The first incident occurred on November 26, 2003, where Druz claims he parked his two cars in front of Shaugnessy's home. That evening, Shaugnessy was having a party and two of his party guests asked that Druz move his vehicles from in front of Shaugnessy's home due to a shortage of available street parking. Druz refused. Druz claims that three intoxicated guests from Shaugnessy's party, including Harriman, proceeded to "rush[] towards and onto [his] property, shouting obscenities, making obscene comments about [Druz]'s then 17 year old daughter, and menacing [Druz] and his young son." (Id. at 19, ¶ 57.)

After the party guests returned to Shaugnessy's house, Druz called the police. Druz alleges that the Manasquan Police Department ("MPD") dispatcher "abruptly dismissed [him], and refused to send over an officer, stating that the MPD was too busy with other matters to respond." (Id. at 20, ¶ 60.) When Shaugnessy's guests "continued to threaten [him] and his son,

3

and began to approach [his] property again," Druz called the police a second time.  (Id. at ¶ 61.)

When the police arrived at the Druz home, two of the three party guests had returned to Shaugnessy's house.  The responding officer, Smith, interviewed Harriman's father, but Druz alleges that he made no inquiry into who the other actors were.  (Id. at 19-20, ¶ 62.)  Druz further claims that Smith lied in filing his police report in connection with this incident, "falsely implying that the [Druz] had been drinking; misidentifying []Shaugnessy's father-in-law and placing a phony address for him on the police report."  (Id. at 20, ¶ 63.)

The second alleged incident involving Shaugnessy and Harriman occurred in April 2004.  During virtually all of the relevant time period, Druz and Shaugnessy shared a common driveway between their two homes.  Druz claims that, during his residency next door to Shaugnessy, "[his] children were repeatedly accosted by []Shaugnessy" and intimidated from playing in the common driveway so that "Shaughnessy's own children would play there instead."  (Id. at 23-24, ¶ 76.)  As a result, Druz informed Shaugnessy, through correspondence to his attorney, that Shaugnessy's children were no longer permitted to enter the Druz's yard, "even to retrieve an errantly thrown ball, without first obtaining [Druz]'s permission, and that there would be ramifications if [Druz]'s warnings went unheeded."  (Id. at 24, ¶ 77.)

Several days following this letter, Shaugnessy's eldest child entered Druz's yard to retrieve a ball just as Druz was parking in the driveway.  When the child entered the Druz's yard, Druz told him that he could not retrieve his ball, and to return to their own property.  Harriman, who was visiting Shaugnessy's home that day, witnessed the incident and proceeded to "charge[] onto [Druz]'s property."  (Id. at 26, ¶ 81.)    Upon entering the Druz's property, Harriman allegedly brushed by Druz, "simultaneously snarling an anti-Semetic epithet."  (Id. at 27, ¶ 82.)

4

Druz called the police, who responded to the scene. While Druz informed the police of what happened, "including informing them of the bias crime," the police refused to ticket Harriman. (Id. at ¶ 83.) The police's refusal to ticket Harriman was allegedly a result of his status as the Fire Chief of the neighboring town of Brielle. (Id.)

## II.  DISCUSSION

Defendants Shaugnessy and Harriman have moved to dismiss the federal claims against them under FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must presume that all allegations in the Complaint must be taken as true and viewed in the light most favorable to the complainant. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). Resolution of these motions in no way indicates a predisposition by the Court of an issue of contested facts. FED R. CIV PROC. 12(b)(6).

**A.    The Plaintiffs' RICO Conspiracy Claims Are Without Merit**

The Plaintiffs claim that the Defendants entered into a conspiracy "to harm Plaintiffs in their person and to injure Plaintiff's business" (Am. Compl. at 29, ¶ 91) in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. In general, "RICO provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, with a compulsory award of treble damages, costs, and attorneys fees. RICO makes it unlawful for 'any person' who is employed by or associated with 'any enterprise' affecting interstate commerce to participate, directly or indirectly, in the conduct

of such enterprise's affairs through a pattern of racketeering activity." Genty v. Resolution Trust Corp., 937 F.2d 899, 906 (3d Cir.1991) (citing 18 U.S.C. § 1962(c), H.J. Inc., et al. v. Northwestern Bell Telephone Co., et al., 492 U.S. 229, 239 - 43 (1989)).   Examples of prerequisite racketeering activity, referred to as predicate offenses, "include state felonies punishable by imprisonment of more than a year such as murder, kidnaping, gambling or extortion, as well as more than thirty federal crimes, such as drug offenses, obstruction of justice, obscenity, and mail, wire, bankruptcy, and securities fraud. 18 U.S.C. § 1961(1).  A 'pattern' of racketeering requires within a ten-year period the commission of at least two predicate acts bearing the indicia of 'relatedness' and 'continuity.' " Genty, 937 F.2d at 907.

The Plaintiffs' Second Amended Complaint, which was filed with their response to the current Motion to Dismiss, claims to present a "straightforward" allegation of the Defendants' alleged RICO violations.  (Pl. Br. at 2.)  The Plaintiff, in his papers, summarizes the basis of his RICO allegations by claiming that:

> [A]t least one or more of the Defendants in furtherance of the RICO enterprise, committed one or more of the following frauds: they served Plaintiffs with fraudulently conceived tickets through the mails; they interfered with the administration of justice by destroying evidence; they certified on personal knowledge to facts that they did not possess; they repeatedly fabricated probable cause for the purposes of stopping Plaintiff's vehicles; an officer of the MPD concealed his status as the 'Internal Affairs Officer' denying Plaintiffs opportunity to invoke an internal investigation procedure; they pretended to investigate in good faith misconduct by another officer; they pretended to investigate the unlawful actions of Defendants Shaughnessy and Harriman, with no intention of doing so; they falsely accused Plaintiff in bad faith of parking his car unlawfully; they made false statements to a police officer; they completed fraudulent police reports; they defamed Plaintiff Danielle Druz; they fabricated incidents in order to provoke physical confrontations and the involvement of the MPD; they made false reportings to the MPD; they made fabricated complaints to Plaintiff's landlord; and they lied to MPD officers during investigations.

(Pl. Br. at 8.)  Even reviewing the Plaintiffs' proposed Second Amended Complaint, Druz still fails to establish a single RICO predicate offense to support his allegations of an "ongoing RICO enterprise against [him and his family] that was previously commenced by the MPD and certain of its officers years before" (Pl. Br. at 7) that was "knowingly joined" by Shaugnessy and Harriman "in order to augment the damage that was being done to [Druz]'s law practice through interference with his daily life at his place of business."  (Pl. Br. at 6.)

18 U.S.C. § 1961 specifies a series of actions which are indictable under Title 18 of the United States Code as prerequisite or predicate actions to constitute "racketeering activity" under the RICO statute.  The Plaintiffs' proposed Second Amended Complaint lists a series of RICO predicate offences that were allegedly committed by the Defendants in the course of their activities against him, including "18 U.S.C. 1341 (mail fraud); 18 U.S.C. 1343 (wire fraud); 18 U.S.C. 1503 (relating to obstruction of justice); 18 U.S.C. 1513 (relating to retaliating against a victim); and 18 U.S.C. 1951 (relating to interference with commerce)."  (Sec. Am. Compl. at 34, ¶ 103.)  While these claims track the language of the RICO statute, it is well established that, in deciding a motion to dismiss, the Court need not "credit a [C]omplaint's 'bald assertions' or 'legal conclusions.'"  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir.1996)).  See also CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations" ); Crowley v. Corning, Inc., 234 F.Supp.2d 222, 229 (W.D.N.Y.

2002) ("A complaint that contains only conclusory allegations and lacking any factual assertions for support fails even the liberal standard of Federal Rule of Civil Procedure 12(b)(6).") (citing De Jesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996)).  A review of the facts being alleged in the Plaintiffs' proposed Second Amended Complaint demonstrates that none of these claims of RICO predicate offenses are adequately supported by the Defendants' actions as reported in the Plaintiffs' proposed Second Amended Complaint.

The Plaintiffs' first two claims of mail and wire fraud are unsupportable by Druz's own recounting of the Defendants' actions.  "The elements comprising mail and wire fraud under 18 U.S.C. § 1341 and § 1343 are (1) the defendant's participation in a scheme to defraud, which includes false or fraudulent pretenses, representations or promises; (2) the use of the mails or wire communications to execute the scheme; and (3) specific intent to defraud." In re Enron Corp. Securities, Derivative & ERISA Litigation, 284 F.Supp.2d 511, 540 n38 (citing United States v. Bieganowski, 313 F.3d 264, 275 (5th Cir.2002), cert. denied, 538 U.S. 1014 (2003); Chris Albritton Const. Co., Inc. v. Pitney Bowes, Inc., 304 F.3d 527, 532 (5th Cir.2002); United States v. Caldwell, 302 F.3d 399, 406 (5th Cir.2002); United States v. Odiodio, 244 F.3d 398, 402 (5th Cir.2001).  The Plaintiff's proposed Second Amended Complaint attempts to bolster his wire and mail fraud claims by adding specific allegations that the MPD "repeatedly served fraudulently conceived tickets upon Plaintiff utilizing the mails" (Sec. Am. Compl. at 40, ¶ 128) and that Defendant Shaugnessy repeatedly communicated "false complaints over the telephone to Plaintiff's Landlord . . . [and] to the MPD." (Id. at 40, ¶¶ 126-127.)  This, however, is not sufficient to sustain the Plaintiffs' wire and mail fraud claims.  Even taking these allegations as true, they do not constitute a scheme to defraud the Plaintiffs.  "'Fraud' is an intentional or

deliberate misrepresentation of the truth for the purpose of inducing another, in reliance on it, to part with a thing of value or to surrender a legal right.  Fraud, then, is a deceit which, whether perpetrated by words or conduct, or silence, is designed to cause another to act upon it to his or her legal injury."  KEVIN F. O'MALLEY, JAY GRENIG, AND HON. WILLIAM C. LEE, 1A FEDERAL JURY PRACTICE AND INSTRUCTIONS, § 16.08 (5th ed. 2005).  As noted by the Third Circuit, "'there is a component of misplaced trust inherent in the concept of fraud.'" United States v. Iannone, 184 F.3d 214, 222-23 (3d Cir. 1999) (quoting United States v. Garrison, 133 F.3d 831, 838 (11th Cir. 1998) (citations omitted)).  What is being alleged by the Plaintiffs, however, does not involve any effort by the Defendants to engender misplaced trust in their false or misleading representations to induce any action or inaction on the part of the Plaintiff.

    The series of actions Druz is alleging in this case would support a claim that the Defendants conspired to harass him, not defraud him.  Druz claims that the members of the MPD filed unfounded criminal charges against him and conducted numerous traffic stops and issued various citations for violations, which he asserts were largely unsubstantiated.  Druz is also claiming that members of the MPD failed to adequately investigate or prosecute allegations levied by Druz against Shaugnessy, Harriman and others.  Finally, Druz alleges that Shaugnessy encouraged further harassment by lodging unfounded complaints about Druz with his landlord and the MPD.  None of these alleged activities involved a plan or scheme to defraud Druz or his family.  Without any alleged fraudulent purpose or intent behind the Defendants' actions, the Plaintiffs' claims of mail and wire fraud under 18 U.S.C. § 1341 and § 1343 cannot be sustained.

    The Plaintiffs' other claims of RICO predicate offenses are similarly unsupported by their recitation of the alleged facts of the case.  Druz makes claims under 18 U.S.C. § 1503 and 18

9

U.S.C. § 1513, respectively, that Kleinknecht acted to destroy evidence in the case against him for filing a false police report and that Kleinknecht and other members of the MPD acted to intimidate and harass him in retaliation for reporting Kleinknecht's conduct to his superiors. Neither of these statutes, however, is applicable to the conduct that the Plaintiff is alleging.

18 U.S.C. § 1503 prohibits persons from endeavoring "to influence, obstruct, or impede, the due administration of justice." The scope of this statute, however, is limited to proceedings "of any court of the United States" or "before any United States magistrate judge or other committing magistrate." 18 U.S.C. § 1503. Druz alleges that Kleinknecht "obstructed justice by destroying certain evidence that corroborated the witness's [sic] story" in conjunction with Druz's trial in Howell Township Municipal Court on charges of filing a false police report. (Sec. Am. Compl. at 13-14, ¶¶ 35 - 38.) This allegation, even if true, does not fall within the purview of 18 U.S.C. § 1503, and does not constitute a predicate offence for a RICO conspiracy.

18 U.S.C. § 1513 is similarly limited in its scope and applicability. While the statute expressly prohibits "engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damag[ing] the tangible property of another person, or threaten[ing] to do so, with intent to retaliate against any person for" acting as a witness or providing information to law enforcement authorities, the statute's provisions are similarly limited to federal proceedings. 18 U.S.C. § 1513(b). See also 18 U.S.C. § 1515. The basis for Druz's claims under this statute, however, are alleged retaliatory actions by members of the MPD in response to his protesting Kleinknecht's activities to "the Mayor, the Boro Council, the Municipal Judge of Manasquan, and the Monmouth County Prosecutor." (Sec. Am. Compl. at 8, ¶ 17.) Again, this alleged activity, even if true, does not involve a federal proceeding and does not fall under the scope of

18 U.S.C. § 1513.  Therefore, the Plaintiffs' allegations in this matter do not constitute a predicate offence to support their claims of a RICO conspiracy.

The Plaintiffs' final alleged RICO predicate offense is that the Defendants conspired to violate 18 U.S.C. § 1951 by interfering with the operation of Druz's law practice, which he operated out of his home.  To be actionable under this statute, the Defendants' actions must constitute an act of "robbery or extortion" which "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce."  18 U.S.C. § 1951.  Druz's claims appear to be based on the Defendants' alleged use of their position as members of the MPD to "harass and prosecut[e] [him] without justification" which made Druz "a prisoner in his own home." (Sec. Am. Compl. At 16, ¶ 44.)  The fear of unjust prosecution by the MPD allegedly rendered Druz unable to freely leave his home and resulted in "the ruination of [Druz]'s law practice." (Id.)  These alleged actions, however, do not constitute a violation of 18 U.S.C. § 1951.

Because there is no allegation that the Defendants robbed the Druz or his family of any personal property,[1] the Court is left to presume that Druz is claiming that the alleged conduct of the Defendants constituted a form of extortion[2] under the theory that, through their actions, the Defendants so intimidated Druz that he was denied the free use of his business assets in the

---

[1] As defined under 18 U.S.C. § 1951, "[t]he term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."  18 U.S.C. § 1951(b)(1).  No such claim is made in the Plaintiffs' proposed Second Amended Complaint.

[2] As defined under 18 U.S.C. § 1951, "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).

furtherance of his law practice. As the Supreme Court noted in Scheidler v. National Organization for Women, 537 U.S. 393, 402 (2003), however, such a claim would be an "unwarranted expansion" of the reach of extortion as defined under § 1951. To constitute extortion under § 1951, Druz must allege that the Defendants' actions resulted in the taking of money or other property of value from him. Scheidler, 537 U.S. at 402-03. Even if, as alleged here, the Defendants' conduct interfered with, disrupted, and "in some instances completely deprived" Druz of his ability to exercise his property rights and operate his law office - such acts do not constitute extortion under § 1951 because the Defendants did not "'obtain' [Druz's] property." Id. at 404.

Because Plaintiffs have failed to sufficiently allege a single actionable predicate offence under 18 U.S.C. § 1961, their claims of a RICO conspiracy among the Defendants in this case cannot be sustained. Accordingly, this Court **GRANTS** the Defendants' Motion to Dismiss the federal RICO claims against Defendants Shaugnessy and Harriman. The Court also dismisses the federal RICO claims against the remaining Defendants in this case as being similarly without merit for the reasons noted above.

**B.    The Plaintiffs' Constitutional Claims Against Defendants Shaugnessy and Harriman are Without Merit**

The Plaintiffs' proposed Second Amended Complaint also asserts violations of Substantive Due Process and Equal Protection against Shaugnessy and Harriman. (Sec. Am. Compl. at 39-41, ¶¶ 123-132.) The Plaintiffs' ability to bring these claims in federal court falls under the rubric of 42 U.S.C. § 1983, and its protections against wrongful state action under the

Fourteenth Amendment of the United States Constitution. The Fourteenth Amendment's state action requirement applies to any claim brought under § 1983. If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action "under color of state law" for § 1983 purposes. Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 295 n2 (2001) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982)). "Faithful adherence to the state action requirement requires careful attention to the gravamen of the plaintiff's complaint." Blum v. Yaretsky, 457 U.S. 991, 1003 (1982).

The threshold inquiry in a § 1983 action is whether the conduct in question was committed by a person acting under color of state law. If the Complaint alleges only that private misconduct caused the deprivation at issue, the federal claim fails because the Fourteenth Amendment "'erects no shield against merely private conduct, however discriminatory or wrongful.'" Id. at 1002 (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)). The state action requirement assures "that constitutional standards are invoked 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'" Brentwood Academy, 531 U.S. at 295 (citing Blum, supra ) (emphasis in original).

The apparent basis for Druz's attempt to transform Harriman's alleged conduct into state action seems to be that Harriman serves as the Fire Chief for the neighboring town of Brielle and that, when the alleged incidents involving him occurred, he was visiting Shaugnessy's home in "his marked Brielle Fire Department vehicle." (Sec. Am. Compl. at 5, ¶ 5.) The sole link between Shaugnessy's alleged conduct and any state action appears to be that he happens to be married to Harriman's sister, making him the brother-in-law of the neighboring town's Fire

Chief. (Id. at ¶ 6.)

Druz's effort to transform Harriman's alleged acts into state action is too attenuated to sustain the Plaintiffs' § 1983 claims. It is well settled that, where an off-duty public official engages in "purely private acts which [are] not furthered by any actual or purported state authority," they are not state actors for purposes of § 1983. Barna v. City of Perth Amboy, 42 F.3d 808, 816 (3d Cir. 1994) (finding an off-duty police officer who used his nightstick in a fight was not a state actor for purposes of Section 1983). See also Screws v. United States, 325 U.S. 91. 111 (1945) ("It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded"); Ackaa v. Hilfiger Co., 1997 WL 763021, *1 (E.D.Pa. 1997) (finding employment status of defendants as full-time police officers who are charged for actions relating to their part-time employment as store security guards "far too attenuated and indirect to support a § 1983 claim"); Bonenberger v. Plymouth Township, et al., 1996 WL 729034, *2 (E.D.Pa. Dec. 18, 1996) ("absent any meaningful indicia of state authority, actions taken by someone who happens to be a police officer are not necessarily attributable to the state"). Druz's claims that Harriman has "a marked fire department vehicle, so that he can respond to fire alarms '24/7; and in fact, Fire Chief Harriman is on call at all times, and responds accordingly" (Sec. Am. Compl. at 6, ¶ 10) is irrelevant. It is clear that the two alleged incidents where Druz claims that Harriman trespassed onto his property were utterly unrelated to his duties as Fire Chief of the neighboring town and represented purely private conduct that was in no way conducted under the color of state law. Accordingly, Shaugnessy's conduct cannot reasonably be characterized as under color of state law either since the apparent basis for transforming his actions into state conduct appears to be

his relationship with Harriman.

The Plaintiffs' alternative argument that Harriman and Shaugnessy can still be liable under § 1983 because they acted in concert with the MPD for the purposes of depriving the Druz of his Constitutional rights is similarly unavailing. (Pl. Br. at 11.) In the two incidents set forth in the Plaintiffs' proposed Second Amended Complaint involving Shaugnessy and Harriman, the MPD only became involved after Druz called them to the scene. To now assert that the MPD was acting in concert with Harriman and Shaugnessy, even though their involvement was solely at Druz's request, is absurd. Because the Plaintiffs' proposed Second Amended Complaint fails to demonstrate any alleged actions of Shaugnessy and Harriman which were conducted under color of state law, the Plaintiffs' constitutional claims against Shaugnessy and Harriman cannot be sustained under § 1983. Accordingly, Defendants Shaugnessy and Harriman's Motion to Dismiss the federal constitutional claims against them is **GRANTED**.

C. **The Court Declines to Dismiss the Plaintiffs' Remaining State Law Claims Against Defendants Shaugnessy and Harriman for Lack of Subject Matter Jurisdiction Because They are Colorably Related to the Federal Claims Remaining Against the Other Named Defendants.**

In addition to the federal claims addressed above, the Plaintiffs also bring numerous state law claims for assault, harassment, bias crime, trespass, fraud, and false reporting against Harriman and Shaugnessy. Defendants Harriman and Shaugnessy have moved to dismiss these remaining state law claims against them on the grounds that, absent the federal claims against them, the Court should decline to exercise supplemental jurisdiction over the pendent state law


claims asserted in Count Five[3] which appear to also be repeated in Count Seven of the Plaintiff's proposed Second Amended Complaint.  Because these claims are colorably related to the remaining federal claims in this case against the other named Defendants, the Court will decline at this time to dismiss these claims for lack of subject matter jurisdiction.  The Court therefore **DENIES, WITHOUT PREJUDICE**, the Motion to Dismiss the remaining state claims by Defendants Shaugnessy and Harriman.

### III.  CONCLUSION

For the reasons stated above, and for good cause shown, the Court **PARTIALLY GRANTS** the Motion to Dismiss filed by Defendants Shaugnessy and Harriman.  The Court also **GRANTS** the Motion to Amend/Correct the Complaint filed by Plaintiff Druz.  An appropriate form of order will be filed herewith.

Date:   April 3, 2006

    s/Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

---

[3] Note that the Plaintiffs' proposed Second Amended Complaint contains two separate counts that are both labeled "Fifth Count." (Sec. Am. Compl. at 39-41, ¶¶ 123-136.) The Court is referring to the second of the Counts labeled "Fifth Count" in this Complaint as containing the pendent state law claims against Defendants Shaugnessy and Harriman.  (Id. at 40.)  These same claims, however, are also repeated against Defendants Shaugnessy and Harriman in the Count labeled "Seventh Count."  (Id. at 43-45, ¶¶ 140-46.)